**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0006215
27-MAR-2015
09:36 AM**

NO.  CAAP-13-0006215

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ADELINE N. PORTER, Claimant-Appellant, v.
THE QUEENS MEDICAL CENTER, Employer-Appellee, Self-Insured


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2012-438)
(2-02-15470, 2-02-14441, 2-02-14445, 2-02-15471, 2-10-07337)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Reifurth and Ginoza, JJ.)

Claimant-Appellant Adeline N. Porter (**Porter**) appeals from the December 3, 2013 "Order" and the December 3, 2013 "Decision and Order," both issued by the Labor and Industrial Relations Appeals Board (**LIRAB**).

On appeal, Porter contends the LIRAB erred when it affirmed a decision from the Department of Labor and Industrial Relations, Disability Compensation Division (**DCD**), which denied her request to reopen her workers' compensation case for Multiple Chemical Sensitivity (**MCS**) related injuries that occurred on August 9, 2002, August 31, 2002, November 6, 2002, and November 8, 2002, and on May 13, 2003 (together, **injury claims**). As best as can be determined, Porter also contends the LIRAB erred in not reopening her workers' compensation cases because (1) the State of Hawai'i did not recognize her injury as compensable until after her case had concluded and (2) Employer-Appellee, Self-Insured Queen's Medical Center (**QMC**) engaged in fraudulent conduct.

## I. BACKGROUND

Porter filed claims for workers' compensation benefits on August 1, 2003 and September 19, 2003, alleging that she suffered from work-related MCS injuries on August 9, 2002, August 31, 2002, November 6, 2002, and November 8, 2002 (collectively, **2002 injuries**). On March 19, 2004, the DCD denied Porter's request for compensation for her 2002 injuries because it did not recognize MCS as a compensable injury. On July 19, 2005, LIRAB affirmed the DCD's denial of Porter's request for compensation. Porter did not pursue judicial review of LIRAB's decision.[1]

On October 14, 2008, Porter filed a new claim for workers' compensation benefits for an additional MCS injury that allegedly occurred on May 13, 2003 (**2003 injury**) and re-requested compensation for her 2002 injuries. In letters dated October 22, 2008 and December 1, 2009, the DCD notified Porter that it was unable to process her request for a hearing for her 2002 injuries. In support of its determination, the DCD's letters referred Porter to its March 19, 2004 decision, denying her claim for her 2002 injuries, and LIRAB's July 19, 2005 "Decision and Order", affirming the DCD's denial (**July 19, 2005 D&O**).

On March 10, 2011, the DCD denied Porter compensation for her 2003 injury claim. In its decision, the DCD determined that Porter's 2003 injury was barred under HRS § 386-82 (1993),[2] which limits a claimant's period of recovery to "two years after

---

[1] Hawaii Revised Statutes (**HRS**) § 386-88 (1993) provides in relevant part:

> **§386-88 Judicial review.** The decision or order of the appellate board shall be final and conclusive, except as provided in section 386-89, unless within thirty days after mailing of a certified copy of the decision or order, the director or any other party appeals to supreme court subject to chapter 602 by filing a written notice of appeal with the appellate board[.]

[2] HRS § 386-82 provides in relevant part:

> **§386-82 Claim for compensation; limitation of time.** The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations (1) within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest, and (2) within five years after the date of the accident or occurrence which caused the injury.

2

the date at which the effects of the injury for which the employee is entitled to compensation have become manifest, and . . . within five years after the date of the accident or occurrence which caused the injury." Porter did not appeal the DCD's March 10, 2011 decision to LIRAB.[3]

On July 30, 2010, while Porter's October 14, 2008 request for compensation was still pending, Porter filed yet another workers' compensation claim for her 2002 injuries and 2003 injury. On the same day, Porter sent a letter to the DCD requesting that the Director of the DCD (**Director**) reopen her 2002 injury claims that were previously denied in LIRAB's July 19, 2005 D&O, pursuant to HRS § 386-89(c) (1993)[4] (**July 30, 2010 Request to Reopen**). Porter's July 30, 2010 Request to Reopen stated that "[a]s per the letter of Gary S. Hamada [Administrator of the DCD] dated September 6, 2006 . . . the Department of Labor now recognizes Multiple Chemical Sensitivity (MCS), as an injury which may be compensable." Porter further claimed that "[t]here was obviously a mistake in the determination of fact previously which precluded [Porter] from pursuing her claim, i.e., that MCS was not a physical condition which was recognized as an injury."

---

[3] HRS § 386-87(a) (1993) ("Appeals to appellate board.") provides in relevant part, that "[a] decision of the director shall be final and conclusive between the parties, except as provided in section 386-89, unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board by filing a written notice of appeal with the appellate board of the department."

[4] HRS § 386-89(c) provides in relevant part:

> **§ 386-89 Reopening of cases; continuing jurisdiction of director.**
>
>     . . . .
>
> (c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation. No compensation case may be reviewed oftener than once in six months and no case in which a claim has been rejected shall be reviewed more than once if on such review the claim is again rejected.

In a letter addressed to the DCD and dated March 23, 2011, (**March 23, 2011 Request to Reopen**) Porter claimed that she had not received a response to her July 30, 2010 Request to Reopen and had not received a hearing date for her workers' compensation claim dated July 30, 2010. In her letter, Porter further alleged that QMC committed fraudulent acts that led the DCD to deny her workers' compensation claim for her 2003 injury. Specifically, Porter alleged the following:

> 1. Employer concealed "The Report of industrial Accident or Incident" and the Emergency Room Record of 5/13/03. . . .
>
> 2. On June 23, 2003, Mr. J. Taylor enclosed in his letter to Mr. Scott Leong, copies of medical records including Emergency Room document and Report of Industrial Accident of 5/13/03 . . . .
>
> 3. On October 1, 2010, in [Mr.Leong's] letter to the Department of Labor & Industrial Relations, Mr. Leong wrote, "We are writing to advise you that claimant never received any treatment for alleged injury on May 13, 2003. . . . Therefore, there are no medical reports related to the alleged work injury and no record to submit."

Porter also alleged that on November 18, 2002, QMC fraudulently requested an extension to complete their investigation by misrepresenting facts. Porter requested the DCD reopen her case as to her 2003 injury[5] and penalize QMC under HRS § 386-98(d) (Supp. 2014).[6]

---

[5]     As best as can be determined, Porter relied on HRS § 386-89(b) (1993) to support reopening her 2003 injury claim. HRS § 386-89(b) provides, in relevant part, that "[t]he director may at any time, either of the director's own motion or upon the application of any party, reopen any case on the ground that fraud has been practiced on the director or on any party and render such decision as is proper under the circumstances."

[6]     HRS § 386-98 provides in relevant part:

> **§386-98 Fraud violations and penalties.**  (a) A fraudulent insurance act, under this chapter, shall include acts or omissions committed by any person who intentionally or knowingly acts or omits to act so as to obtain benefits, deny benefits, obtain benefits compensation for services provided, or provides legal assistance or counsel to obtain benefits or recovery through fraud or deceit by doing the following:
>
> > (1)    Presenting, or causing to be presented, any false information on an application;
> >
> > (2)    Presenting, or causing to be presented, any false or fraudulent claim for the payment of a loss;

(continued...)

4

On May 16, 2011, QMC sent a response to Porter's March 23, 2011 Request to Reopen, in which QMC addressed Porter's

---

[6](...continued)

(3)  Presenting multiple claims for the same loss or injury, including presenting multiple claims to more than one insurer except when these multiple claims are appropriate and each insurer is notified immediately in writing of all other claims and insurers;

(4)  Making, or causing to be made, any false or fraudulent claim for payment or denial of a health care benefit;

(5)  Submitting a claim for a health care benefit that was not used by, or on behalf of, the claimant;

(6)  Presenting multiple claims for payment of the same health care benefit;

(7)  Presenting for payment any undercharges for health care benefits on behalf of a specific claimant unless any known overcharges for health care benefits for that claimant are presented for reconciliation at that same time;

(8)  Misrepresenting or concealing a material fact;

(9)  Fabricating, altering, concealing, making a false entry in, or destroying a document;

(10)  Making, or causing to be made, any false or fraudulent statements with regard to entitlements or benefits, with the intent to discourage an injured employee from claiming benefits or pursuing a workers' compensation claim; or

(11)  Making, or causing to be made, any false or fraudulent statements or claims by, or on behalf of, a client with regard to obtaining legal recovery or benefits.

. . . .

(d)  An offense under subsections (a) and (b) shall constitute a:

(1)  Class C felony if the value of the moneys obtained or denied is not less than $2,000;

(2)  Misdemeanor if the value of the moneys obtained or denied is less than $2,000; or

(3)  Petty misdemeanor if the providing of false information did not cause any monetary loss.

Any person subject to a criminal penalty under this section shall be ordered by a court to make restitution to an insurer or any other person for any financial loss sustained by the insurer or other person caused by the fraudulent act.

allegations of fraud as to QMC's October 1, 2010 letter. QMC contended that "[p]erhaps, [its] October 1, 2012 letter was unclear. Although there was treatment on May 13, 2003, it was considered by [QMC] to be related to one of the four 2002 claims." QMC maintained that "[b]ecause [QMC] had always considered the May 13, 2003 treatment to be part of the 2002 claims, the October 1, 2010 letter was correct, however, to the extent that a new injury of May 13, 2003 was later being claimed, the letter could be considered inaccurate but not intentionally so."

On June 16, 2011, the DCD issued its decision, denying Porter's request as follows:

> 1. Your four cases 2-02-14444 (D/A: 8/9/02), 2-02-14445 (D/A: 8/31/02), 2-02-15471 (D/A: 11/6/02), and 2-02-15470 (D/A: 11/8/02) involving [MCS] were denied on March 19, 2004 by an administrative decision rendered by the [DCD] and affirmed by the [LIRAB] on July 19, 2005. Since there was no appeal of the LIRAB decision dated July 19, 2005, the ruling became final.

> 2. Your case 2-10-07337 (D/A: 5/13/03) also involving MCS was denied per administrative decision by the DCD on 3/10/11 as it was not filed timely in accordance with section 386-82, HRS. The decision was not appealed to the LIRAB, and therefore, the ruling became final.

The DCD indicated that it "considered [Porter's] cases closed and therefore, [it] was unable to reopen the cases." The DCD also dismissed Porter's fraud complaint without an explanation as to the basis of its dismissal.

On June 18, 2011, Porter appealed the DCD's dismissal of her injury and fraud claims to LIRAB. On October 28, 2011, LIRAB issued its "Order of Remand for Further Proceedings," ordering Porter's case be remanded to the DCD for a hearing and decision.

On September 27, 2012, the DCD held a hearing on whether QMC committed fraud for any of Porter's workers' compensation claims and whether Porter was entitled to reopen her claims pursuant to HRS § 386-89 (1993).

On November 28, 2012, the DCD issued its decision. In its decision, the DCD denied Porter's request to reopen her claims and denied her allegations of fraud, finding that QMC did not commit fraud, conceal evidence, or engage in stalling

tactics.

On December 3, 2012, Porter appealed the DCD's November 28, 2012 decision to LIRAB. On April 9, 2013, LIRAB issued a "Pretrial Order" that limited the issues to be determined on appeal to the following issues:

    a.    Whether Employer committed fraud for any of the August 9, 2002, August 31, 2002, November 6, 2002, November 8, 2002, and May 13, 2003 claims pursuant to Section 386-98, HRS.

    b.    Whether Claimant is entitled to reopen her claims for dates of injuries on August 9, 2002, August 31, 2002, November 6, 2002, November 8, 2002, and May 13, 2003, pursuant to Section 386-89, HRS.

QMC filed its motion for summary judgment on August 13, 2013, in which, QMC argued that Porter failed to appeal LIRAB's July 19, 2005 D&O and the DCD's March 10, 2011 decision and, therefore, "[was] prohibited from reopening her cases to re-litigate her five denied MCS claims." QMC contended that "[Porter's] failure to exhaust her administrative remedies preclude[d] her from re-litigating the cases and issues via the reopening procedure." QMC also argued that it did not commit fraud for any of Porter's claims and that, nevertheless, Porter's fraud complaint was time-barred, pursuant to HRS § 386-98(f) (Supp. 2014).[7]

On September 17, 2013, LIRAB issued its "Decision and Order," partially granting and partially denying QMC's motion for summary judgment **(MSJ D&O)**. LIRAB agreed with QMC that Porter was not entitled to reopen her injury claims because Porter failed to appeal LIRAB's July 19, 2005 D&O and the DCD's March 10, 2011 decision. In addition, LIRAB also determined that Porter's fraud claims for acts that may have occurred before 2009 were time-barred, pursuant to HRS § 386-98(f), and that the DCD did not exercise its discretion to pursue fraud claims against QMC on its own right, so as to warrant reopening her pre-2009 fraud claims. Thus, LIRAB concluded that Porter was not entitled to relief as to her injury and pre-2009 fraud claims. LIRAB

---

    [7]    HRS § 386-98(f) provides that, "[w]ith respect to the administrative penalties set forth in subsection (e), no penalty shall be imposed except upon consideration of a written complaint that specifically alleges a violation of this section occurring within two years of the date of said complaint."

concluded that the only issue that remained was whether QMC's October 1, 2010 letter constituted fraud.

On September 30, 2013, Porter filed a "Request for Reconsideration or Appeal" from LIRAB's MSJ D&O (**Motion for Reconsideration**).

On December 3, 2013, LIRAB issued its "Order," denying Porter's Motion for Reconsideration (**Reconsideration Order**). Also on December 3, 2013, LIRAB issued its "Decision and Order" as to whether QMC's October 1, 2010 letter constituted fraud (**Letter D&O**). LIRAB found that "[Porter] did not present clear and convincing evidence that there were intentional or knowing acts or omissions by Employer's counsel to ignore, disregard, or violate any of the prohibitions set forth in Section 386-98, HRS." LIRAB concluded that "[g]iven that [Porter's] own physicians and her own attorneys were not entirely clear that treatment sought and rendered before 2008 pertained to a May 13, 2003 work injury, it would have been unreasonable to expect Employer's counsel to know what [Porter's] own physicians and attorney apparently did not know prior to the filing of her [workers' compensation claim] in 2008." LIRAB ultimately held that QMC's October 1, 2010 letter did not constitute fraud and, thereby, affirmed the DCD's November 28, 2012 decision, denying Porter' request to reopen.

On December 23, 2013, Porter filed a timely notice of appeal to this court, appealing LIRAB's Letter D&O. Porter did not designate LIRAB's MSJ D&O or Reconsideration Order in her notice of appeal.

## II.  STANDARD OF REVIEW

Appellate review of the LIRAB's decision is governed by HRS § 91-14(g) (1993), which provides that:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or

8

jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." Potter v. Hawai'i Newspaper Agency, 89 Hawai'i 411, 422, 974 P.2d 51, 62 (1999) (internal quotation marks and citations omitted).

"'[T]he courts may freely review an agency's conclusions of law.'" Lanai Co., [Inc. v. Land Use Com'n, 105 Hawai'i 296, 307, 97 P.3d 372, 383 (2004)] (quoting Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990)). The LIRAB's conclusions will be reviewed de novo, under the right/wrong standard. Tate v. GTE Hawaiian Tel. Co., 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994) (citing State v. Furutani, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994)).

Tauese v. State, Dep't of Labor & Indus. Relations, 113 Hawai'i 1, 26, 147 P.3d 785, 810 (2006) (internal brackets omitted), as corrected (Nov. 21, 2006).

## III. DISCUSSION

A. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b) Noncompliance

Porter's opening brief fails to comply with the requirements of HRAP Rule 28(b). The opening brief does not include a standard of review section or a statement of the points of error on appeal.[8] Noncompliance with HRAP Rule 28 is

---

[8] HRAP Rule 28 provides in relevant part:

**Rule 28. BRIEFS.**
. . . .

**(b) Opening Brief.** Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:
. . . .

(4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall
(continued...)

sufficient grounds to dismiss Porter's appeal. See HRAP Rule 30 ("When the brief of an appellant is otherwise not in conformity with these rules, the appeal may be dismissed . . . ."); see also Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995). Nevertheless, given the Hawai'i Supreme Court's ruling in Marvin v. Pflueger, we will address Porter's arguments as best as can be determined. See Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) ("[N]oncompliance with Rule 28 does not always result in dismissal of the claims, and [appellate courts have] consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible." (citation and internal quotation marks omitted)). Porter's counsel is warned, however, that future noncompliance with HRAP Rule 28(b) may result in sanctions against him.

B.  Notice Of Appeal

The bulk of Porter's arguments on appeal appear to challenge LIRAB's MSJ D&O, and by extension, LIRAB's Reconsideration Order. Together, LIRAB's two orders granted and affirmed summary judgment in favor of QMC on Porter's injury claims and pre-2009 fraud claim.

Porter's notice of appeal failed to designate either order. Instead, Porter designated LIRAB's December 3, 2013 Letter D&O, which was limited to the issue of whether QMC committed fraud by way of its October 1, 2010 letter.

HRAP Rule 3(c)(2) provides that an appellant's notice of appeal "shall designate the judgment, order, or part thereof

---

[8](...continued)
state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. . . .

. . . .

(5) A brief, separate section, entitled "Standard of Review," setting forth the standard or standards to be applied in reviewing the respective judgments, decrees, orders or decisions of the court or agency alleged to be erroneous and identifying the point of error to which it applies.

appealed from." See Chun v. Bd. of Trustees of Employees' Ret. Sys. of State of Hawaii, 92 Hawai'i 432, 448, 992 P.2d 127, 143 (2000) (holding that because the appellants did not designate an order in their notices of appeal, the court lacked appellate jurisdiction over the propriety of the order). The designation requirement, however, is not jurisdictional. City & Cnty. Of Honolulu v. Midkiff, 57 Haw. 273, 275, 554 P.2d 233, 235 (1976). Thus, the Hawai'i Supreme Court has held that "a mistake in designating the judgment . . . should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." Id. at 275, 554 P.2d at 235; see Ek v. Boggs, 102 Hawai'i 289, 294, 75 P.3d 1180, 1185 (2003); Munoz v. Chandler, 98 Hawai'i 80, 91, 42 P.3d 657, 668 (App. 2002); State v. Graybeard, 93 Hawai'i 513, 516, 6 P.3d 385, 388 (App. 2000).

Here, Porter failed to designate LIRAB's Reconsideration Order in her notice of appeal, but still attached the order to her notice. Porter's notice of appeal states:

> Notice is hereby given that [Porter], Claimant-Appellant, [p]ro se, pursuant to 386-88 HRS, appeals to the Intermediate Court of Appeals of the State of Hawai'i from the Decision and Order of the [LIRAB], filed herein on December 3, 2013, and attached hereto as Exhibit "A".

"Exhibit 'A'" in Porter's notice of appeal includes LIRAB's Reconsideration Order and its Letter D&O, which were both filed on December 3, 2013. Given that Porter filed her notice of appeal pro se and attached LIRAB's Reconsideration Order and Letter D&O as one attachment, it can be fairly inferred that she intended to appeal both orders.

Furthermore, the record contains no indication that Porter's designation error misled QMC in any way because QMC's answering brief includes arguments addressing LIRAB's Reconsideration Order. See Graybeard, 93 Hawai'i at 516, 6 P.3d at 388 (determining that the appellee was not misled by an incorrect designation in the appellant's notice of appeal because the appellee argued as if the appellant had designated the subject judgment). Thus, we hold that we have appellate jurisdiction over Porter's appeal from LIRAB's Reconsideration Order.

11

Likewise, we also have jurisdiction to review LIRAB's MSJ D&O. The Hawai'i Supreme Court has held that

> a decision by the Director may be appealed to the LIRAB. HRS § 386-87 (1993). Further, a "decision or order" of the LIRAB may be appealed to this court. HRS § 386-88 (1993). HRS § 91-14(a) authorizes judicial review of "a final decision and order in a contested case." Generally, <u>a "final order" is "an order ending the proceedings, leaving nothing further to be accomplished."</u> Gealon v. Keala, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979). However, a final order is not necessarily the last decision in a case. <u>In Re Hawai'i Gov't Emp. Ass'n. [,Local 152, AFSCME, AFL-CIO</u>, 63 Haw. 85, 88, 621 P.2d 361, 364 (1980)]. "What determines the finality of an order . . . is the nature and effect of the order[.]" <u>Id.</u>

<u>Lindinha v. Hilo Coast Processing Co.</u>, 104 Hawai'i 164, 168, 86 P.3d 973, 977 (2004) (emphasis added and footnotes omitted). In addition, "an order that finally adjudicates a benefit or penalty under the workers' compensation law is an appealable final order under HRS § 91-14(a), although other issues remain." <u>Id.</u> (citing <u>Bocalbos v. Kapiolani Med. Ctr. for Women & Children</u>, 89 Hawai'i 436, 443, 974 P.2d 1026, 1033 (1999)).

As indicated in the Pretrial Order, LIRAB was tasked with resolving two issues in Porter's LIRAB appeal: (1) whether QMC committed fraud under HRS § 386-98 and (2) whether Porter was entitled to reopen her claims for her alleged 2002 and 2003 injuries under HRS § 386-89. LIRAB's Reconsideration Order and Letter D&O were orders that finally adjudicated Porter's workers' compensation claims and ended the proceedings before LIRAB with nothing further to be accomplished and. <u>See</u> <u>Lindinha</u>, at 168-70, 974 P.2d at 977-79. Thus, the Reconsideration Order and Letter D&O were the appealable final orders of the LIRAB.

"An appeal from a final judgment 'brings up for review all interlocutory orders not appealable directly as of right which deal with the issues in the case.'" <u>Ueoka v. Szymanski</u>, 107 Hawai'i 386, 396, 114 P.3d 892, 902 (2005) (quoting <u>Pioneer Mill Co. v. Ward</u>, 34 Haw. 686, 694 (1938)). Because LIRAB's Reconsideration Order was the final order of the board, its previous MSJ D&O was an interlocutory order. <u>See</u> <u>Lindinha</u>, 104 Hawai'i at 170, 86 P.3d at 979. Therefore, in addition to having appellate jurisdiction to review LIRAB's Reconsideration Order, we also have jurisdiction to review LIRAB's MSJ D&O.

12

C.    LIRAB's September 17, 2013 MSJ D&O

On appeal, Porter challenges LIRAB's MSJ D&O and alleges that LIRAB erred in denying her July 30, 2010 Request to Reopen without first addressing whether she satisfied the requirements of HRS § 386-89(c).

HRS § 386-89(c) provides in part:

> On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.

In Porter's July 30, 2010 Request to Reopen, Porter maintained that "[s]ince 2004, there have been scientific research and peer reviewed publications supporting [MCS] as a medical disorder."  Porter appears to allege that the medical community now recognizes MCS as a medical disorder and, therefore, there was a change or mistake in LIRAB's July 19, 2005 determination of fact that warrants reopening her case under HRS § 386-89(c).

Instead of addressing whether Porter's request to reopen satisfied the requirements of HRS § 386-89, LIRAB's MSJ D&O held that Porter was not entitled to reopen her claims for her MCS injury claims "because [Porter] did not appeal the final Decision and Order of the Board dated July 19, 2005[.]"[9] However, such an appeal was not necessary for Porter to reopen her case.

HRS § 386-88 governs appeals from a LIRAB decision.

---

[9]    LIRAB's MSJ D&O also acknowledges that Porter failed to appeal the "final decision of the Director dated March 10, 2011 and the Director did not reopen the case and pursue allegations of fraud on his own behalf, which appears to be in reference to Porter's March 23, 2011 Request to Reopen her 2003 injury claim, pursuant to HRS § 386-89(b).  HRS § 386-89(b) instructs that "[t]he director may at any time, either of director's own motion or upon the application of any party, reopen any case on the ground that fraud has been practiced on the director or on any party and render such decision as is proper under the circumstances."  (Emphasis added.)  Because we hold infra that Porter waived her fraud claims on appeal, we focus our analysis on whether LIRAB erred by not addressing Porter's July 30, 2010 Request to Reopen her 2002 injury claims based upon a change or mistake of fact under HRS § 386-89(c).

HRS § 386-88 specifically provides that if a claimant does not appeal LIRAB's decision within 30 days, "[t]he decision or order . . . shall be final and conclusive, <u>except</u> as provided by section 386-89[.]" (Emphasis added.) Thus, a claimant can seek to reopen their workers' compensation case under HRS § 386-89, even if they did not appeal LIRAB's original decision, so as long as the requirements of HRS § 386-89 are met. <u>See</u> HRS § 386-88; <u>see also</u> <u>McLaren v. Paradise Inn Hawaii LLC</u>, 132 Hawai'i 320, 328-29, 321 P.3d 671, 679-80 (2014) (citing <u>Alvarez v. Liberty House, Inc.</u>, 85 Hawai'i 275, 278, 942 P.2d 539, 543 (1997) (holding that "the twenty-day time limitation to appeal does not commence until the [Director of Labor and Industrial Relations'] formally denies an HRS § 386-89 motion")). Accordingly, LIRAB erred in denying Porter's July 30, 2010 Request to Reopen her 2002 injury claims without first addressing whether her request satisfied the requirements of HRS § 386-89(c).

D.   LIRAB's December 3, 2013 Letter D&O

On appeal, Porter also challenges LIRAB's determination that QMC did not commit fraud. Instead of formulating an argument in support of Porter's fraud appeal, however, Porter's opening brief contends that "[t]he issue of fraud in this case has been argued very well by [Porter] and her arguments are in the exhibits. [Porter] would rely on the arguments made in her Memoranda and exhibits, instead of repeating all of those arguments to the court."

If we accept Porter's previously filed memoranda as support for her fraud argument, and thus part of her opening brief, Porter would be in violation of HRAP Rule 28(a), which provides that "an opening . . . brief shall not exceed 35 pages[.]" <u>See</u> <u>Buscher v. Boning</u>, 114 Hawai'i 202, 221, 159 P.3d 814, 833 (2007) (waiving points of error where appellant failed to present an argument and, instead, directed the court to previously filed memoranda).

Inasmuch as Porter's opening brief does not include a fraud argument and only directs this court to her previously filed memoranda and exhibits, we deem this point of error waived. <u>See</u> HRAP Rule 28(b)(7) (stating that an opening brief should

14

contain "[t]he argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. . . . Points not argued may be deemed waived.").

## IV.  CONCLUSION

We vacate the Labor and Industrial Relations Appeals Board's December 3, 2013 "Order," and September 17, 2013 "Decision and Order," as it pertains to requests to reopen claims under HRS § 386-89(c).  We remand the issue of reopening Porter's claims under HRS § 386-89(c) to the Labor and Industrial Relations Appeals Board for further proceedings consistent with this opinion.

The December 3, 2013 "Decision and Order" of the Labor and Industrial Relations Appeals Board is affirmed.

DATED:  Honolulu, Hawaiʻi, March 27, 2015.

On the briefs:

Jeffrey M. Taylor
for Claimant-Appellant.

Shawn L.M. Benton
(Leong Kunihiro Lezy & Benton)
for Employer-Appellee, Self-
Insured.

Presiding Judge

Associate Judge

Associate Judge

15